REVISED

# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

No. 94-30513

SIDNEY MARTS,

Plaintiff-Appellant,

versus

PHILLIP HINES, ET AL.,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana

July 18, 1997

Before POLITZ, Chief Judge, WISDOM, KING, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHÉ, WIENER, BARKSDALE, EMILIO M. GARZA, DeMOSS, BENAVIDES, STEWART, PARKER, and DENNIS, Circuit Judges.

POLITZ, Chief Judge:

We have taken this case en banc to resolve relevant conflicting circuit precedents, to continue our development of procedures to address and dispose appropriately of a continually burgeoning prisoner *pro se* docket, both at the trial and appellate levels,[1] and to note an appropriate awareness of the intervening

---

[1]Including but not limited to procedures established in **Watson v. Ault**, 525 F.2d 886 (5th Cir. 1976) (supplementing questionnaire); **Spears v. McCotter**, 766 F.2d 179 (5th Cir. 1985) (informal hearing); **Graves v. Hampton**, 1 F.3d 315 (5th Cir. 1993).

Prison Litigation Reform Act of 1995.[2]

## Background

The facts concerning the appeal by Sidney Marts of his 42 U.S.C. § 1983 complaint against an assistant district attorney for Orleans Parish, Louisiana, a public defender, and a private attorney representing a codefendant in a state court criminal action, are set forth in the panel opinion.[3] Marts' complaint implicated the integrity of the state court criminal proceeding, thus requiring the district court to make a threshold determination whether his action was not frivolous and justified the retention of federal jurisdiction.[4] The trial court dismissed without prejudice the claim for money damages against the private counsel and public defender because they were not state actors, and that against the prosecutor on the basis of absolute immunity. Finding no factual basis for the conspiracy charge it was dismissed as frivolous, also without prejudice. The panel modified the dismissals to be with prejudice, except for the conspiracy claim, and affirmed the trial court. We determined that because of conflicting circuit precedents it was necessary to revisit this issue en banc.

## Analysis

---

[2]Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. No. 104-134, 110 Stat. 1321 (1996).

[3] 68 F.3d 134 (5th Cir. 1995), reh'g en banc granted, 79 F.3d 17 (5th Cir. 1996).

[4]See **Ballard v. Wilson**, 856 F.2d 1568 (5th Cir. 1988) (citing **Deakins v. Monaghan**, 484 U.S. 193, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988) (when a section 1983 action might have a disruptive effect upon contemporaneous state criminal proceedings, the federal district court should stay its hand)).

Once again we consider the application of limited judicial resources to an ever increasing number of prisoner *pro se* filings. Our task, simply stated, is to implement procedures which will aid in the separation of the wheat from the chaff in such filings as early in the judicial process as is possible, in an effort to ensure that judicial resources will not be wasted and that the meritorious claims may receive the timely attention and disposition warranted.

The rule that the *in limine* dismissals of actions by the district court generally are to be with prejudice[5] particularly fits dismissals under the former 28 U.S.C. § 1915(d), now a part of 28 U.S.C. § 1915(e)(2).[6] Dismissals under the *in forma pauperis* statute are in a class of their own, acting not as dismissals on the merits

---

[5]See Fed.R.Civ.P. 41(b) which provides in pertinent part:

Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

[6]Section 1915(e)(2) now reads:

Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that
--
    (A) the allegation of poverty is untrue; or
    (B) the action or appeal --
        (i) is frivolous or malicious;
        (ii) fails to state a claim on which relief may be granted; or
        (iii) seeks monetary relief against a defendant who is immune from such relief.

but, rather, as denials of *in forma pauperis* status.[7]  Typically, but not exclusively, such dismissals may serve as *res judicata* for subsequent *in forma pauperis* filings, but they effect no prejudice to the subsequent filing of a fee-paid complaint making the same allegations.[8]  Exceptions included complaints containing claims which, on their face, were subject to an obvious meritorious defense,[9] or instances in which the plaintiff was given an opportunity to expound on the factual allegations by a *Watson* questionnaire or a *Spears* hearing and could not assert a claim with an arguable factual basis,[10] or claims without an arguable basis in law.[11]

On en banc reconsideration, considering the distinct features of such *in forma pauperis* proceedings, we now hold that dismissals as frivolous or malicious should be deemed to be dismissals with prejudice unless the district court specifically dismisses without prejudice.  When the trial court dismisses without prejudice it is expected that the court will assign reasons so that our appellate review of the trial court's exercise of discretion may be performed properly.  Unexplained dismissals without prejudice will necessitate a remand.

We reserve for another day and an appropriate appeal the question of the full

---

[7]**Denton v. Hernandez**, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992).

[8]**Id.**  The Supreme Court teaches that the dismissal may have a *res judicata* effect on frivolousness determinations for future *in forma pauperis* petitions.

[9]One example is a claim subject to a peremptory time bar where no amendment or subsequent paid filing could overcome the fatal defects.  **Graves**.

[10]**Id.**

[11]**Id.** (noting one likely scenario -- an allegation of infringement of a claimed legal interest which does not exist).

application of this rule to the expanded bases for denial of *in forma pauperis* status specified in the Prison Litigation Reform Act.

In reaching today's decision we have determined and now hold that in cases involving dismissals as frivolous or malicious under the *in forma pauperis* statute, in which the defendant has not been served and was, therefore, not before the trial court and is not before the appellate court, the appellate court, notwithstanding, has the authority to change a district court judgment dismissing the claims without prejudice to one dismissing with prejudice, even though there is no cross-appeal by the obviously non-present "appellee." This limited exception is the product of our effort to make effective the prudential rule announced herein.

Consistent with today's holding we must now vacate and remand this action to the district court for entry of an order of dismissal with prejudice except as relates to the conspiracy claim and for such further proceedings as may be deemed appropriate.

VACATED and REMANDED.

ENDRECORD

5

GARWOOD, Circuit Judge, with whom KING, HIGGINBOTHAM, SMITH, DUHE' EMILIO M. GARZA, BENAVIDES and DENNIS Circuit Judges, join, dissenting:

I respectfully dissent from this Court's *sua sponte* action, taken where only the plaintiff has appealed, changing the district court's judgment of dismissal without prejudice to one of dismissal with prejudice. I likewise dissent from the majority's conclusory announcement that in all pre-service dismissals without prejudice of *in forma pauperis* suits where the plaintiff alone appeals, this Court will determine whether the dismissal could properly have been with, rather than without, prejudice and will modify the judgment accordingly.[12]

The Court provides no explanation, justification, or authority for this action, and does not even tip its hat to the Federal Rules or the relevant jurisprudence. Its decision hence appears to be more an exercise of will than of judgment.

Some sixty years ago, just before the Federal Rules went into effect, the Supreme Court had occasion to review a decision of the Eighth Circuit which had modified in a manner favorable to the appellee a judgment of the district court, despite the absence of any cross-appeal. The Supreme Court reversed the Eighth Circuit in a unanimous opinion by Justice Cardozo. *Morley Construction Co. v. Maryland Casualty Co.*, 57 S.Ct. 325 (1937). The opinion begins by stating the question before the Supreme Court: "The *power* of an appellate court to modify a

---

[12]   I concur in the balance of the Court's opinion.

decree in equity for the benefit of an appellee in the absence of a cross-appeal is here to be admeasured." *Id*. at 326 (emphasis added). The Court went on to hold that the appellate court had no such power, stating:

> "Without a cross-appeal, an appellee may 'urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it.' United States v. American Railway Express Co., 265 U.S. 425, 435, 44 S.Ct. 560, 564, 68 L.Ed. 1087 [1924]. What he may not do in the absence of a cross-appeal is to 'attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below.' Ibid. The rule is inveterate and certain." *Id*. at 327-28.[13]

---

[13]     Although *Morley* was decided before the Federal Rules went into effect, its applicability under the Federal Rules has never been questioned. *See, e.g., Mass. Mutual Life Ins. Co. v. Ludwig*, 96 S.Ct. 2158, 2159 (1976) (reversing Court of appeals because its decision conflicted with "the 'inveterate and certain' rule" of *Morley*). See also the following decisions of this Court expressly relying on *Morley* in support of holdings that the appellee who did not cross-appeal could not seek to enlarge his rights under the judgment appealed or diminish those of his adversary, *viz*: *Matter of Toyota of Jefferson*, 14 F.3d 1088, 1091 n.1 (5th Cir. 1994); *Texas Commerce Bank v. National Royalty Corp*., 799 F.2d 1081, 1083 (5th Cir. 1986); *United States v. Central Gulf Lines*, 699 F.2d 243, 248 (5th Cir. 1983); *Alford v. City of Lubbock*, 664 F.2d 1263, 1273 (5th Cir.), *cert. denied*, 102 S.Ct. 2239 (1982); *North Texas Producers Ass'n v. Metzger Dairies*, 348 F.2d 189, 197 & n.10 (5th Cir. 1965); *Newport Industries v. Crosby Naval Stores*, 139 F.2d 611, 612 (5th Cir. 1944); *Arkansas Fuel Oil Co. v. Leisk*, 133 F.2d 79, 81 & n.7 (5th Cir. 1943).

The Supreme Court has likewise continued to apply the *Morley* principles in refusing to consider a contention of a respondent who did not cross-petition where if the contention were sustained the judgment of the court of appeals would be modified in a manner adverse to the petitioner. *See, e.g., Mills v. Electric Auto-Lite Company*, 90 S.Ct. 616, 620 n.4 (1970) (citing *Morley*). *See also Trans World Airlines v. Thurston*, 105 S.Ct. 613, 620 n.14 (1985); *Federal Energy Admin. v. Algonquin SNG, Inc*., 96 S.Ct. 2295, 2303 n.11 (1976) (citing *Mills*); *United States v. ITT Continental Baking Co*., 95 S.Ct. 926, 929 n.2 (1975) (citing *Morley*). Most recently, in *Northwest Airlines, Inc. v. County of Kent*, 114 S.Ct. 855, 862 (1994), the Court wrote: "A cross-petition is required, however,

The Supreme Court did not suggest that the Eighth Circuit had abused its discretion or that the circumstances were not sufficiently exceptional to justify its action, but rather held that the Eighth Circuit simply did not have the "*power*" to do what it did "in the absence of a cross-appeal."

Yet this Court now, in violation of the "inveterate and certain" rule of *Morley,* does just what the Supreme Court held the Eighth Circuit lacked the power to do.[14]

I.

Over the years, decisions of the courts of appeals have divided on whether the *Morley* rule requiring a cross-appeal in order to modify the judgment to enlarge the appellee's rights thereunder, or diminish those of the appellant, is a rule governing the power or jurisdiction of the appellate court or is rather a rule of practice as to which exceptions may be made on a case by case basis in highly

when the respondent seeks to alter the judgment below."

[14]    It is well-settled that where the plaintiff alone appeals a dismissal without prejudice, the appellate court may not change the judgment to one of dismissal with prejudice, as this enlarges the rights of the defendant-appellee under the judgment, for which a cross-appeal is required. *See, e.g., Transcapital Financial v. Office of Thrift Supervision*, 44 F.3d 1023, 1026 (D.C. Cir. 1995); *Treadway v. Farley*, 35 F.3d 288, 296 (7th Cir. 1994); *New Castle County v. Hartford Acc. & Indem. Co.*, 933 F.2d 1162, 1206 (3d Cir. 1991); *Benson v. Armontrout*, 767 F.2d 454, 455 (8th Cir. 1985). We similarly so held in *Arvie v. Broussard*, 42 F.3d 249 (5th Cir. 1994). In *Arvie*, we declined to follow earlier decisions in *Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993), and *Ali v. Higgs*, 892 F.2d 438 (5th Cir. 1990), in which this Court had changed dismissal without prejudice to with prejudice without even commenting on the absence of a cross-appeal, much less making any attempt to justify such unusual action. *Cf. Penhurst State School v. Halderman*, 104 S.Ct. 900, 918 (1984) (decisions assuming jurisdiction *sub silentio* are not binding precedent on that issue).

8

unusual and compelling circumstances. A representative sample of cases from other circuits holding that the cross-appeal requirement is one governing the power or jurisdiction of the appellate court includes the following: *E.F. Operating Corp. v. American Buildings*, 993 F.2d 1046, 1049 & n.1 (3d Cir.), *cert. denied*, 114 S.Ct. 193 (1993); *Francis v. Clark Equipment Co.*, 993 F.2d 545, 552-53 (6th Cir. 1993); *New Castle County v. Hartford Acc. & Indem. Co.*, 933 F.2d 1162, 1206 (3d Cir. 1991); *Rollins v. Metropolitan Life Ins. Co.*, 912 F.2d 911, 917 (7th Cir. 1990); *Young Radiator Co. v. Celotex Corp.*, 881 F.2d 1408, 1415-17 (7th Cir. 1989); *Broth. of Maintenance Employees v. St. Johnsburg & Lamoille*, 806 F.2d 14, 15-16 (2d Cir. 1986) (at least where no cross-appeal by *any* party); *Benson v. Armontrout*, 767 F.2d 454, 455 (8th Cir. 1985); *Savage v. Cache Valley Dairy Ass'n*, 737 F.2d 887, 888-89 (10th Cir. 1984); *Securities and Exchange Commission v. Youmans*, 729 F.2d 413, 415 (6th Cir. 1984) (citing *Morley*); *Martin v. Hamil*, 608 F.2d 725, 730-31 (7th Cir. 1979) (citing *Morley); Zapico v. Bucyrus-Erie Co.*, 579 F.2d 714, 725-26 (2d Cir. 1978); *Gomez v. Wilson*, 477 F.2d 411, 414 n.10 (D.C. Cir. 1973); *Whitehead v. American Security and Trust Company*, 285 F.2d 282, 285-86 (D.C. Cir. 1960). Some of the cases from other circuits which treat the absence of a cross-appeal as rule of practice which can be dispensed with in certain rare circumstances include the following. *United States v. Tabor Court Realty Corp.*, 943 F.2d 335, 342-45 (3d Cir. 1991); *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 32-33 (D.C. Cir.), *cert. denied*, 111 S.Ct. 508, 509 (1990); *Lafaut v. Smith*, 834 F.2d 389, 394 n.9 (4th Cir. 1987); *Bryant v. Technical Research Company*, 654 F.2d 1337, 1341-42 (9th Cir.

1981); *Hysell v. Iowa Public Service Co.*, 559 F.2d 468, 476 (8th Cir. 1977). *See also Transcapital Financial v. Office of Thrift Supervision*, 44 F.3d 1023, 1026 (D.C. Cir. 1995) (declining relief to appellee for want of a cross-appeal notice, but stating "we will not waive this requirement in these circumstances"); *Freeman v. B&B Associates*, 790 F.2d 145, 151 (D.C. Cir. 1986) (failure to file notice of cross-appeal is not jurisdictional, and can be waived "but only in cases involving exceptional circumstances"; applying rule that where no cross-appeal "'we may not and should not consider'" an argument that would enlarge appellee's rights under judgment). Still other cases have denied an appellee relief because of the lack of a cross-appeal, but have not indicated whether this is on a jurisdictional basis or simply as a matter of practice. *See, e.g., Tredway v. Farley*, 35 F.3d 288, 296 (7th Cir. 1994); *Turpen v. City of Corvallis*, 26 F.3d 978, 980 (9th Cir.), *cert. denied*, 115 S.Ct. 426 (1994); *U.S. v. Lumbermen's Mut. Cas. Co.*, 917 F.2d 654, 662 (1st Cir. 1990).

Likewise in this Court there are decisions viewing the question as one of power or jurisdiction, and others which treat it as a rule of practice or as at least subject to exception in particularly unusual circumstances. Among our decisions treating the lack of a cross-appeal as limitation on the appellate court's jurisdiction or power are the following: *Kelly v. Foti*, 77 F.3d 819, 822 (5th Cir. 1996) ("Because Kelly did not file a notice of appeal or cross-appeal, however, we lack jurisdiction to alter the district court's judgment in her favor"); *Memorial Hosp. System v. Northbrook Life Ins. Co.*, 904 F.2d 236, 239 N.2 (5th Cir. 1990) (declining to consider appellee's request for relief because they did not cross-appeal and "we

10

have held that 'the filing of a notice of appeal is a "mandatory precondition" to our exercise of jurisdiction'"); *Ayers v. United States*, 750 F.2d 499, 457 (5th Cir. 1985) (appellee "Ayers' challenge to the set-off against the damage award clearly attempts to enlarge his rights under the district court's judgment. As such, a cross-appeal is necessary to pursue the challenge and Ayers' failure to file a cross-appeal pursuant to Fed. R. App. P. 4(a)(3) precludes consideration of his claim"); *Shipp v. General Motors Corp.*, 750 F.2d 418, 428 (5th Cir. 1985) (declining to consider appellee Shipp's request for relief because his notice of cross-appeal was late; "As the filing of a notice of appeal is a 'mandatory precondition' to our exercise of jurisdiction [citations], we must decline to entertain Shipp's belated cross-points"); *Alford v. City of Lubbock*, 664 F.2d 1263, 1272-73 (5th Cir.), *cert. denied*, 102 S.Ct. 2239 (1982) ("Appellees contend that the district court erred in denying them attorney's fees . . . We cannot consider this contention. Appellees filed no cross-appeal . . . In the absence of a cross-appeal, an appellee cannot 'attack the [district court's] decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary,'" quoting *Morley* at 328); *Duriso v. K-Mart*, 559 F.2d 1274, 1278 (5th Cir. 1977) ("Our consideration of this issue is precluded by [appellee] Duriso's failure to file a timely notice of cross-appeal. Rule 4(a), F.R.A.P."); *Dupuy v. Dupuy*, 551 F.2d 1005, 1026 n.34 (5th Cir. 1977) (refusing to consider appellee's claim that erroneous charge entitled it to new trial on liability as well as damages "[b]ecause the appellee did not cross-appeal" such relief "may occur only on cross-appeal"); *North Texas Producers Ass'n v. Metzger Dairies, Inc.*,

11

348 F.2d 189, 197 (5th Cir. 1965) (declining relief on appellee's contention fee award below was inadequate because "in the absence of a cross-appeal, this Court cannot enlarge the rights of the appellee," citing *Morley*); *Arkansas Fuel Oil Co. v. Leisk*, 133 F.2d 79, 81 & n.7 (5th Cir. 1943) (rehearing granted to eliminate modification of judgment below which increased award to appellee, because appellee did not cross-appeal; noting that although on appeal this Court had jurisdiction to revise the judgment appealed, nevertheless "the jurisdiction thus conferred must be invoked before it may be exercised" and without a cross-appeal "appellee may not attempt either to enlarge his rights under the judgment appealed from or to lessen the rights of his adversary," citing *Morley*). *See also Richardson v. Byrd*, 709 F.2d 1016, 1024 (5th Cir. 1983) ("Absent a timely cross-appeal, [appellee] Gassner's request for additional relief is not before us"); *Likens v. Jefferson Standard Life Ins. Co.*, 69 F.2d 98, 99 (5th Cir. 1934) (question of whether trial court correctly allowed an offset to defendants-appellants "is not before us as the plaintiff has not [cross] appealed").

In other cases, though we have not *expressly* spoken in terms of the appellate court's jurisdiction or power we have denied relief to an appellee simply on the basis that without a cross-appeal an appellee may not seek to enlarge its rights (or diminish its adversary's) under the judgment appealed, generally citing *Morley*, which, as previously noted, spoke to the "power" of the appellate court. *See, e.g., Matter of Toyota of Jefferson, Inc.*, 14 F.3d 1088, 1091 n.1 (5th Cir. 1994) (citing *Morley*); *Speaks v. Trikora Lloyd P.T.*, 838 F.2d 1436, 1439 (5th Cir. 1988); *Texas*

12

*Commerce Bank v. Nat. Royalty Corp.*, 799 F.2d 1081, 1083 (5th Cir. 1986) (citing *Morley*); *United States v. Central Gulf Lines, Inc.*, 699 F.2d 243, 248 (5th Cir. 1983) (citing *Morley*); *United States v. Yorfino*, 412 F.2d 329, 330 (5th Cir. 1969) ("In the absence of a cross-appeal, as was the case, defendants-appellees are without standing to contest the judgment entered by the district court"); *Abel v. Brayton Flying Service*, 248 F.2d 713, 717 & n.11 (5th Cir. 1957); *Newport Industries v. Crosby Naval Stores*, 139 F.2d 611, 612 (5th Cir. 1944) (citing *Morley*). In none of these cases did we suggest that this was a rule of practice the invocation of which was discretionary with the appellate court or discuss whether the circumstances were exceptional or the like. We simply applied a fixed rule, generally relying on *Morley*.

On the other hand, there are a few decisions of this Court which have treated the cross-appeal requirement as a rule of practice subject to exceptions in rare particular cases. We took that approach in *Calhoun County v. Roberts*, 137 F.2d 130, 132 (5th Cir. 1943), and again in *United States v. Gordon*, 406 F.2d 332, 337-38 n.6 (5th Cir. 1969), and *United States v. United States Steel Corporation*, 520 F.2d 1043, 1052 (5th Cir. 1975), *cert. denied*, 97 S.Ct. 61 (1976). So far as I can determine, we have not since 1975 expressly invoked the rule of practice theory to modify a district court judgment in a manner favorable to an appellee who has not filed a cross-appeal. However, in *Kicklighter v. Nails by Jannee*, 616 F.2d 734, 742-44 (5th Cir. 1980), we did hold that an appeal by a third party defendant, whose liability was derivative of the defendant's, successfully challenging an instruction

13

relating to the defendant's liability, "operates" as an appeal by the defendant, resulting in a new trial as to both the defendant and third party defendant.[15]

On one occasion, we opined in dicta that an appellate court does have authority to grant relief to appellees who have not appealed, but declined to grant such relief, noting that it is available only in a very limited set of defined circumstances. In *Anthony v. Petroleum Helicopter*, 693 F.2d 495, 497-98 (5th Cir. 1982), PHI, owner of a helicopter which crashed, was sued by an injured passenger,

---

[15]    We stated that "we have held . . . that the third party defendant . . . has appealed on behalf of defendant," *id*. at 743, and

> "[b]ecause the third-party defendant's liability is derivative of defendant's liability, and because the reversal of the judgment against the third-party defendant is based solely on an error in the main case, *i.e.*, plaintiff's case against defendant, we hold that third-party defendant has appealed and asserted this error not only on its own behalf but also on behalf of defendant. Thus the third-party defendant's appeal operates, in this limited circumstance, as an appeal of the judgment of defendant as well as the judgment of third-party defendant." *Id*. (footnotes omitted).

We were careful to note the limited nature of our holding, observing that the D.C. Circuit's *Whitehead* case was distinguishable because "[t]he plaintiff in *Whitehead* could not be said to have appealed on behalf of the defendant," *id*. at 743; and we likewise reserved judgment on cases from other circuits which had allowed a successful appeal by one party to operate in favor of a nonappealing party whose interests were parallel to, though not derivative of, those of the appellant. *Id*. at 743 & n.14.

I note in passing our decision in *French v. Estelle*, 696 F.2d 318 (5th Cir. 1982), *cert. denied*, 103 S.Ct. 2108 (1983), in which we affirmed the district court's grant of habeas relief, albeit on a different ground than that relied on by the district court even though the prisoner had not cross-appealed. Although such an affirmance may have had adverse collateral consequences to the state, we noted that despite his failure to cross-appeal "the petitioner may urge the appellate court to affirm the district court's decision on any ground raised below." *Id*. at 320.

14

who also sued the manufacturer, MBB, the distributor, Boeing, and Texaco; PHI brought claims for contribution and for loss of the helicopter against MBB and Boeing; and MBB and Boeing sought contribution against Texaco. The trial court granted summary judgment exonerating MBB, Boeing, and Texaco from all liability. The surviving passenger appealed the judgment exonerating MBB, Boeing, and Texaco, but then settled. PHI appealed the judgment but only insofar as it exonerated MBB and Boeing. We reversed, holding that summary judgment for MBB and Boeing was improper, as there were genuine issues of fact. We refused to consider the request of appellees MBB and Boeing, who had not cross-appealed, to also set aside the summary judgment in favor of Texaco, stating "[since] neither party [MBB and Boeing] filed a protective appeal against Texaco pursuant to Fed. R. App. P. 4(a)(3), we dismiss the appeal with respect to Texaco." *Id*. at 498. We also observed that "MBB and Boeing do not fall within any of the exceptional circumstances in which the appellate courts have exercised their discretionary powers." *Id*. We had earlier described these circumstances as follows:

> "Although appellate courts have 'discretionary power to retain all parties in the lawsuit [on] remand . . . to insure an equitable resolution at trial,' *Bryant v. Technical Research Co*., 654 F.2d 1337, 1342 (9th Cir. 1981), this discretion has been exercised only in narrowly defined situations: when the reversal 'wipes out all basis for recovery against the nonappealing, as well as against the appealing defendant,' *Daniels v. Gilbreath*, 668 F.2d 477 (10th Cir. 1982); *Kicklighter v. Nails by Jannee, Inc*., 616 F.2d 734, 742-45 (5th Cir. 1980); when the failure to reverse with respect to the nonappealing party will frustrate the execution of the judgment in favor of the successful appellant, *In re Barnett*, 124 F.2d 105, 1008-12 (2d Cir. 1942); or when the appealed decision could reasonably be read as not being adverse to the

15

nonappealing party. *Bryant*, 654 F.2d at 1342-43." *Id*. at 497-98.

The last three times we have expressly addressed the "rule of practice" argument we have declined to either adopt or reject it, but have denied relief to the appellee due to the failure to cross-appeal. In *Robicheaux v. Radcliff Material, Inc*., 697 F.2d 662 (5th Cir. 1983), the defendant appealed an award to the plaintiffs-employees (welders), and, because they had not cross-appealed, we refused to consider the plaintiffs' claim that the judgment erroneously failed to include liquidated damages, quoting the rule as stated in *Morley* and also citing, *inter alia*, *Alford* and *Dupuy*. *Robicheaux* at 668. We noted that "plaintiff welders argue that this rule is not jurisdictionally mandated and may be judicially waived." *Id*. However, we did not expressly accept or reject this argument, but simply held that the liquidated damages issue was "not properly before us," noting that "no more reason is shown for our exercising any power we might have under Fed. R. App. P. 2 to suspend the requirement for a timely cross-appeal, Fed. R. App. P. 4(a)(3), than in other such instances." *Id*. In both *Stockstill v. Petty Ray Geophysical*, 888 F.2d 1493 (5th Cir. 1989), and *Crist v. Dickson Welding, Inc*., 957 F.2d 1281 (5th Cir.), *cert. denied*, 113 S.Ct. 187 (1992), we declined to consider requests for relief by those who had not cross-appealed. In each case we noted the *Anthony* dicta suggesting that "an initial notice of appeal is jurisdictional but a protective or cross-appeal is permissive and courts of appeal may retain all parties in order to do justice." *Stockstill* at 1496; *Crist* at 1289 (same). Each opinion further notes "[t]he continued viability of the principle recognized in *Anthony* is questionable, however,

in view of *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988)." *Crist* at 1289; *Stockstill* at 1496 (same). In *Stockstill* we quoted from the Seventh Circuit's thorough discussion of this issue in *Young Radiator Co.*, which explained that *Torres* made clear that the requirements of Fed. R. App. P. 3 and 4 must be satisfied as to each party and that a notice of appeal which was adequate as to some plaintiffs was nevertheless inadequate to confer appellate jurisdiction as to a plaintiff unnamed therein. *Stockstill* at 1496-97. *Stockstill* goes on to observe "[u]nder *Torres*, therefore, it is doubtful we have jurisdiction to review the district court's dismissal of BMF." 888 F.2d at 1497. In both *Crist* and *Stockstill*, we refrained from ultimately resolving this question as we concluded that even if the *Anthony* dicta were viable, nevertheless none of the three narrow circumstances in which *Anthony* indicated the absence of a cross-appeal could be dispensed with were present, and so we granted the motions to dismiss these contentions by the parties who had not filed protective appeals. *Crist* at 1289-90; *Stockstill* at 1497.

For a better understanding of whether the *Morley* limitations relate to the power or jurisdiction of the court of appeals or merely state a rule of practice from which the court can depart in its discretion, some review of the development of the relevant Federal Rules is helpful. *Morley* was handed down in early 1937. In December 1937, the Supreme Court adopted what are now the Federal Rules of Civil Procedure. Rule 73 governed the mechanics of taking an appeal, including the form of notice of appeal, but did not initially provide any time limits for

17

appealing, which were covered by statute.  In 1946, Rule 73(a) was amended by, *inter alia*, prescribing a thirty-day period (sixty days if the United States were a party) in which an appeal could be taken (this operated to shorten the time allowed, which had generally been three months).  9 *Moore's Federal Practice* (2d ed.), ¶¶ 203.22, 203.24[1], [2], 203.25[1].[16]  In 1966, Rule 73(a) was again amended to provide, for the first time, an additional period for an appeal taken after an appeal by another party.  *Id*. ¶ 203.24[2].[17]  As amended in 1966, and as in effect when replaced by the new Rules of Appellate Procedure in 1968, the first sentence of Rule 73(a) provided:

> "(a) HOW AND WHEN TAKEN.  An appeal permitted by law from a district court to a court of appeals shall be taken by filing a notice of appeal with the district court within 30 days from the entry of the judgment appealed from, except that: (1) in any action in which the United States or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days from such entry; (2) upon a showing of excusable neglect the district court in any action may extend the time for filing the notice of appeal not exceeding 30 days from the expiration of the original time herein prescribed; (3) if a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days of the date on which the first notice of appeal was filed, or within the time otherwise herein prescribed, whichever period last expires; (4) an appeal by permission of a court of appeals obtained under Title 28, U.S.C. § 1292(b) shall be taken in accordance with the rules of the Court of Appeals."

---

[16]    This amendment also allowed the district court to extend the time for an additional thirty days "upon a showing of excusable neglect based on a failure of a party to learn of the entry of the judgment."  *Id*. ¶ 203.24[2].

[17]    The 1966 amendment also expanded the excusable neglect for which the district court could extend the appeal period for an additional thirty days from that based solely on failure to learn of the entry of the judgment (see note 5 above) to any form of excusable neglect.  *Id*.

The first sentence of the second paragraph of Rule 73(a) provided (as does now the third sentence of Fed. R. App. P. 3(a)) that "[f]ailure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the court of appeals deems appropriate, which may include dismissal of the appeal."

When the Rules of Appellate Procedure were adopted, former Rule 73 was abrogated, and its provisions concerning the time in which a notice of appeal must be filed were placed in Fed. R. App. P. 4, while those dealing with other aspects of the notice of appeal, including the necessity for it and its contents, were placed in Fed. R. App. P. 3.  The first three sentences of Rule 3 now provide:

> "**(a) Filing the Notice of Appeal**.  An appeal permitted by law as of right from a district court to a court of appeals must be taken by filing a notice of appeal with the clerk of the district court within the time allowed by Rule 4.  At the time of filing, the appellant must furnish the clerk with sufficient copies of the notice of appeal to enable the clerk to comply promptly with the requirements of subdivision (d) of this Rule 3.  Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the court of appeals deems appropriate, which may include dismissal of the appeal."

Except for the 1994 addition of the second sentence (and its change of the "shall" to "must" in the first sentence), this language is unchanged from the originally promulgated Rule 3.  The relevant portions of Fed. R. App. P. 4(a) now provide as follows:

> "**(a) Appeal in a Civil Case—**
> (1) Except as provided in paragraph (a)(4) of this Rule, in a civil case in which an appeal is permitted by law as of right from a district court to a court of appeals the notice of appeal required by Rule 3 must be

19

filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from; but if the United States or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days after such entry. . . .

(2) [premature notice of appeal] . . .

(3) If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period last expires.

(4) If any party files a timely motion of a type specified immediately below, the time for appeal for all parties runs from the entry of the order disposing of the last such motion outstanding. . . .

(5) The district court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by this Rule 4(a). . . . No such extension shall exceed 30 days past such prescribed time or 10 days from the date of entry of the order granting the motion, whichever occurs later.

(6) [allowing 14-day reopening of appeal period where party does not receive notice within 21 days after entry of judgment, provided motion made within 180 days of entry or 7 days of notice, whichever first] . . .

(7) [entry of judgment defined] . . ."

As can be seen, current Rule 4(a)(3) is virtually identical to clause (3) of former Rule 73(a) as amended in 1966. The Committee Note respecting the 1966 amendment adding clause (3) to Rule 73(a) explains:

"The exception number (3) in the first sentence affords additional time for appeal to all parties other than an initial appellant whenever the first appeal taken from a judgment is taken within the 14 days preceding expiration of the time for appeal. . . . The added time which may be made available by the operation of the provision is not restricted to cross appeals in the technical sense, *i.e.,* to appeals by parties made appellees by the nature of the initial appeal. The

20

exception permits any party to the action who is entitled to appeal within the time ordinarily prescribed to appeal within such added time as the sentence affords. *Bertman v. J.A. Kirch Co.*, 377 U.S. 995 (1964), *Schildhaus v. Moe*, 335 F.2d 529 (2d Cir. 1964) and *Whitehead v. American Security and Trust Co.*, 285 F.2d 282 (D.C. Cir. 1960) are illustrative of the desirability of a change in the present rule."[18]

As explained in *Moore's*, the purpose of the 1966 addition of clause (3) to the first sentence of former Rule 73(a) was

". . . simply to permit each party to a judgment to decide upon the advisability of an appeal with full knowledge of the intentions of all other parties with respect to an appeal. It not infrequently happens that a party is satisfied with a judgment only if it is to be the final result; that is, if no other party intends to appeal from it. Before the addition of [the predecessor to] Rule 4(a)(3), a party so situated had no certain way of knowing whether any other party intended to appeal. *All parties were required to appeal within the time regularly fixed for taking an appeal.* A party who desired to appeal only if some other party took an appeal either had to forego that desire and file a notice of appeal, thereby possibly provoking other appeals that might not have been taken, or keep watch at the clerk's office during the final days of the time for appeal in order to be sure that he would learn of the fact of the appeal in time to take his own." *Id*. ¶ 204.11[1] at 4-18 (footnotes omitted; emphasis added).

By the time that clause (3) was added to the first sentence of former Rule 73(a), it was already clear that the time limits for filing a notice of appeal were "mandatory and jurisdictional." *United States v. Robinson*, 80 S.Ct. 282, 288 (1960). This is also reflected in the provision of the second paragraph of former Rule 73(a) that "failure of an appellant to take any step *other than the*

---

[18]     Quoted in *Moore's* ¶ 203.25[3]. The cases cited in the last sentence are ones in which the initial appeal was filed on or about the last day, and the other party's notice of appeal was consequently a day or two late, resulting in its dismissal by the court of appeals.

*timely filing of a notice of appeal* does not affect the validity of the appeal" (emphasis added), and in the provision of former Rule 6(b) of the Rules of Civil Procedure that courts "may not extend the time for taking any action under rules 25, 50(b), (d), and (e), 60(b), and 73(a) and (g), except to the extent and under the conditions stated in them." 2 *Moore's Federal Practice* (2d ed.) ¶ 6.01[16].[19]

As previously observed, these provisions have all been carried forward into the Federal Rules of Appellate Procedure. The Committee Note to Rule 3 made at the time the Federal Rules of Appellate Procedure were adopted states:

> "Rule 3 and Rule 4 combine to require that a notice of appeal be filed with the clerk of the district court within the time prescribed for taking an appeal. Because the timely filing of a notice of appeal is 'mandatory and jurisdictional,' United States v. Robinson, 361 U.S. 220, 224 (1960), compliance with the provisions of those rules is of the utmost importance." 9 *Moore's Federal Practice* (2d ed.) ¶ 203.01[2].

Since then, the Supreme Court has time and again reiterated that the filing of a timely notice of appeal is "mandatory and

---

[19] The quoted provision of the second paragraph of Rule 73(a) has been contained in Fed. R. App. P. 3(a) since its adoption. The portion of Rule 6(b) quoted in the text was carried forward as to notices of appeal in Fed. R. App. P. 26(b) (as to the other filings it remains in Fed. R. Civ. P. 6(b)) by the provision contained in Rule 26(b) since its adoption that "the court may not enlarge the time for filing a notice of appeal." *See* 9 *Moore's Federal Practice* ¶¶ 226.01, 226.02. Moreover, Fed. R. App. P. 2 has, since its original adoption with the other Federal Rules of Appellate Procedure, provided that "a court of appeals may, *except as otherwise provided in Rule 26(b)*, suspend the requirements or provisions of any of these rules in a particular case on application of a party or on its own motion and may order proceedings in accordance with its direction." (Emphasis added).

jurisdictional." *See, e.g., Torres v. Oakland Scavenger Co.*, 108 S.Ct. 2405, 2409 (1988) (". . . a court of appeals . . . may not waive the jurisdictional requirements of Rules 3 and 4, even for 'good cause shown' under Rule 2"); *Budinich v. Becton Dickinson And Co.*, 108 S.Ct. 1717, 1722 (1988) ("the taking of an appeal within the prescribed time is mandatory and jurisdictional"); *Griggs v. Provident Consumer Discount Co.*, 103 S.Ct. 400, 403 (1982) ("It is well settled that the requirement of a timely notice of appeal is mandatory and jurisdictional" [internal quotations marks omitted]); *Browder v. Director*, 98 S.Ct. 556, 561 (1978) ("'mandatory and jurisdictional,'" citing *Robinson*).

Similarly, it is plain from both the wording and history of former Rule 73(a)—particularly its first sentence—that the filing within the time there specified of a notice of appeal by one party after another party had timely filed a notice of appeal was as much a necessary precondition to the appellate court's exercise of jurisdiction over the former's appeal as compliance with any of the other time periods specified in the rule's first sentence was a prerequisite to exercise of jurisdiction over the appeals to which such other periods related. As the Supreme Court observed in *Torres* respecting the above quoted Committee Note to Rule 3: "This admonition by the Advisory Committee makes no distinction among the various requirements of Rule 3 and Rule 4; rather it treats the requirements of the two Rules as a single jurisdictional threshold." *Torres* at 2408. Clause (3) of the first sentence of former Rule 73(a) merely extends the otherwise applicable and

23

jurisdictional thirty-day period provided in the initial clause of the sentence by up to fourteen days, just as clause (1) employs a sixty-day period for cases in which the United States is a party. There is simply nothing in the wording or structure of the first sentence of former Rule 73(a) to suggest that the time limit of its clause (3) was any less mandatory and jurisdictional than any of the other time limits specified in that sentence. Indeed, the history of the adoption of clause (3) of former Rule 73(a) clearly reflects that it was intended to allow the fourteen additional days following timely appeal by another party in order to avoid the jurisdictional dismissal which otherwise ensued when an appellee waited to see if another party would appeal, but the other party did not do so until the last day, so the appellee was only able to file his notice of cross-appeal after the thirty days had expired.

It might be argued that the "cross-appeal" provision—clause (3) of the first sentence of former Rule 73(a) and its successor, Fed. R. App. P. 4(a)(3)—merely affords a "safe harbor," so that a party who complies therewith, after another party has timely appealed, has the *right* to seek a modification in his favor of the judgment below without being subject to any "rule of practice" limitation on that right. Such an argument, however, illogically treats this "cross-appeal" time limit differently from the other notice of appeal time limits specified in the same rule. Moreover, it ignores the provisions of the second paragraph of former Rule 73(a)—now carried forward as the third sentence of Fed. R. App. P. 3(a)—that "failure of an appellant to take any step *other than the*

*timely filing of a notice of appeal* does not affect the validity of the appeal" (emphasis added), and it likewise ignores both the provision of Fed. R. App. P. 26(b)—carrying forward the similar provision of former Fed. R. Civ. P. 6(b)—that "the court may not enlarge the time for filing a notice of appeal" and the related provision of Fed. R. App. P. 2 allowing the courts of appeal to suspend the requirements of the rules in particular cases "*except as otherwise provided in Rule 26(b).*" (Emphasis added). See note 8, *supra,* and accompanying text. It makes no sense to say that the cross-appeal requirement is merely a rule of practice which does not limit the jurisdiction or power of the court of appeals, but that nevertheless the court of appeals is powerless to extend the time allowed therefor provided in Rule 4(a)(3) (and its predecessor former Rule 73(a)) despite being empowered to suspend all the other time limits provided in the appellate rules.

Finally, *Morley* stood and stands as a clear statement of the Supreme Court respecting the appellate court's lack of "power," in the absence of a cross-appeal, to change a trial court judgment so as to enlarge an appellee's rights, or diminish those of the appellant, thereunder.

The inevitable conclusion is that without a timely cross-appeal the appellate court lacks jurisdiction or power to modify the lower court's judgment adversely to the appellant.

The notion that the requirement of a cross-appeal in order to modify the judgment in a manner favorable to the appellee is merely a "rule of practice" which the appellate court may disregard at its

25

discretion is founded on essentially three propositions. I consider these *seriatim*.

First, reliance is placed on *Langnes v. Green*, 51 S.Ct. 243 (1931), which does indeed contain "rule of practice" language. *Id*. at 245-246. However, *Langnes* cannot sustain the weight thus sought to be placed on it. In the first place, *Langnes* predates *Morley*, and *Morley* expressly speaks to the "power" of the appellate court. The Supreme Court has never retreated from *Morley*. See note 2, *supra*. If *Langnes* and *Morley* conflict, the latter clearly controls. Second, the "rule of practice" language in *Langnes* is dicta, as *Langnes* expressly held that the respondent there, who had not cross-petitioned, sought "not to overthrow the [court of appeals] decree, but to sustain it" and hence was within that prong of the rule of *United States v. American Railway Express Co*., 44 S.Ct. 560, 564 (1924),[20] allowing an appellee who has not cross-appealed to "'urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matters overlooked or ignored by it.'" *Langnes* at 246. While we relied on *Langnes* in *Calhoun County*, we recognized that the rule of practice language in *Langnes* was only "considered dictum." *Calhoun County*, 137 F.2d at 132.[21] Even the *Langnes* dicta stresses the admiralty

---

[20]    Both prongs of the rule were later quoted in *Morley* and there described as "inveterate and certain" and as measuring "[t]he power of an appellate court."

[21]    It is to be noted that *Calhoun County* was decided before *any* time limits were contained in former Rule 73(a); also, *Calhoun*

26

nature of the proceedings there  in which appellate review was de

novo and under a separate statutory system; moreover, the language

is directed to Supreme Court *certiorari* review.  *Id*. at 245-246.[22]

---

*County* was an admiralty case, decided at a time when admiralty appeals were governed by separate statutory provisions and review was de novo.  *Id*. at 132.

[22]      It is to be doubted that the *Langnes* dicta is any longer followed so as to allow a respondent who has not cross-petitioned for *certiorari* to seek to modify in his favor the decree of the court of appeals.  *See Northwest Airlines, Inc. v. County of Kent*, 114 S.Ct. 855, 862 (1994).  See also note 2, *supra*.  In *Trans World Airlines, Inc. v. Thornton*, 105 S.Ct. 613 (1985), the court of appeals held that petitioner TWA was liable in damages to the plaintiffs-respondents for violation of the Age Discrimination in Employment Act (ADEA); and it also held that the Air Line Pilots Association (ALPA) had violated the ADEA, but that the plaintiffs could not recover damages from the ALPA because the ADEA did not permit monetary recovery from unions.  TWA petitioned for *certiorari*, but the plaintiffs-respondents did not cross-petition. The Supreme Court held it "was without jurisdiction" to consider the correctness of the court of appeals' ruling as to the ALPA's lack of liability for damages, which plaintiffs-respondents (as well as TWA) urged it to reverse.  *Id*., 105 S.Ct. at 620 n.14.  The Court stated:

>       "In its petition for a writ of certiorari, TWA raised the issue of a union's liability for damages under the ADEA.  Although we granted the petition in full, we now conclude that *the Court is without jurisdiction to consider this question*.  TWA was not the proper party to present this question.  The airline cannot assert the right of others to recover damages against the Union.
>       Both the individual respondents and the EEOC argue that the issue of union liability is properly before the Court.  But the respondents failed to file a cross-petition raising this question.  A prevailing party may advance any ground in support of a judgment in his favor. [citation]  An argument that would modify the judgment, however, cannot be presented unless a cross-petition has been filed. [citation]  In this case, the judgment of the Court of Appeals would be modified by the arguments advanced by the EEOC and the individual plaintiffs, as they are contending that the Union should be liable to them for monetary damages."  *Id*. (emphasis added).

So far as the "rule of practice" approach is followed by the

27

The next argument in favor of the "rule of practice" approach is founded on Fed. R. App. P. 2 (allowing courts of appeals to suspend the rules in particular cases) and Fed. R. Civ. P. 1 (rules "shall be construed and administered to secure the just, speedy and inexpensive determination of every action"). *See, e.g., Robicheaux v. Radcliff Materials, Inc*., 697 F.2d at 628 (declining to exercise "any power we might have under Fed. R. App. P. 2 to suspend the requirement for a timely cross-appeal, Fed. R. App. P. 4(a)(3)"). Of course, as previously noted, Fed. R. App. P. 2 is expressly made subject to Fed. R. App. P. 26(b), which provides that a court of

Supreme Court on *certiorari*, it seems to be only to limit the rights of a respondent who has not cross-petitioned to seek to sustain the judgment of the court of appeals on a different basis than that relied on by the court of appeals. *See, e.g., United States v. ITT Continental Baking Co*., 95 S.Ct. 926, 929 n.2 (1975):

> "Respondent recognizes that, not having cross-petitioned, it cannot attack the judgment insofar as it sustained the findings of violations and imposed penalties for such violations. United States v. American Railway Express Co., 265 U.S. 425, 435, 44 S.Ct. 560, 563, 68 L.Ed. 1087 (1924). Cf. Morley Construction Co. v. Maryland Casualty Co., 300 U.S. 185, 57 S.Ct. 325, 81 L.Ed. 593 (1937). Respondent argues that it may nevertheless seek to sustain the Court of Appeals' limitation on the penalties on the theory that no penalty should have been awarded at all. Ordinarily, however, as a matter of practice and control of our docket, if not of our power, we do not entertain a challenge to a decision on the merits where the only petition for certiorari presents solely a question as to the remedy granted for a liability found to exist, even if the respondent is willing to accept whatever judgment has already been entered against him."

This contrasts with the absolute duty of the court of appeals to rule on issues properly presented by appellee and preserved below which would result in affirmance of the district court's judgment, albeit on a different ground and even though no cross-appeal has been taken. *Mass. Mutual Life Ins. Co. v. Ludwig*, 96 S.Ct. 2158, 2159 (1976).

28

appeals "may not enlarge the time for filing a notice of appeal." As to Fed. R. Civ. P. 1, the Rules of Civil Procedure have long been inapplicable to giving notice of appeal, and when they were applicable former Rule 6(b) prohibited notice of appeal time enlargements not provided for in former Rule 73(a). See note 8, *supra*, and accompanying text. In related contexts, the Supreme Court has consistently rejected these or similar arguments. *See Torres* at 2407-08; *Budinich* at 1722; *Griggs* at 403.

The final and most frequently invoked justification for the "rule of practice" approach to cross-appeals is that the initial appellant's notice of appeal gives the court of appeals jurisdiction over the whole case, so notice of appeal by any other party is not a necessary precondition to exercise appellate power or jurisdiction to modify the judgment in a manner adverse to the appellant.[23] However, as pointed out above, this approach ignores the reason for the 1966 addition of the extra fourteen days for cross-appeal by clause (3) of former Rule 73(a) and is likewise inconsistent with the treatment in former Rule 73(a), and now in Fed. R. App. P. 4(a), of the "cross appeal" time limits in the very same way as the initial appeal time limits, except for the extra fourteen days allowed for the "cross-appeal." Nor does this approach account for the provision in the second paragraph of

---

[23] *See, e.g., Hysell*, 559 F.2d at 476 ("once a timely notice of appeal has been filed from a judgment it gives us jurisdiction to review the entire judgment; rules requiring separate appeals by other parties are rules of practice, which may be waived . . .," citing *Langnes*).

former Rule 73(a), now in Fed. R. App. P. 3(a), that "failure of an appellant to take any steps *other than* the timely filing of a notice of appeal does not affect the validity of the appeal" (emphasis added). This provision was plainly as applicable to appeals under clause (3) of the first sentence of former Rule 73(a) as to appeals under the other provisions of that sentence, just as it is now as applicable to Fed. R. App. P. 4(a)(3) as to Fed. R. App. P. 4(a)(1).[24] Further, the rule of practice approach cannot reasonably account for the provisions of Fed. R. App. P. 26(b)—formerly contained in Fed. R. Civ. P. 6(b)—prohibiting enlargement of the fourteen-day period specified in Fed. R. App. P. 4(a)(3) (and previously in former Rule 73(a)) or the fact that the flexibility authorized to the courts of appeal by Fed. R. App. P. 2 is expressly made subject to this restriction.

Finally, the theory that the initial appeal fulfills all jurisdictional prerequisites so as to empower the appellate court to dispose of all aspects of the entire case appears to be necessarily inconsistent with *Torres*. The Seventh and Third Circuits have expressly so recognized. *See Young Radiator*, 881

---

[24] I note that there is no basis for concluding that a party who files a notice of appeal after another party has done so is not an "appellant." No distinction is made in Fed. R. App. P. 4(a)(3)—or in its predecessor former Rule 73(a)(3)—between those parties who are adverse or potentially adverse to the party first appealing and those who are not. This is also reflected in the above-cited Committee Notes to the 1966 amendment to former Rule 73(a), which state that the new clause (3) "is not restricted to cross appeals in the technical sense, i.e. to appeals by parties made appellees by the nature of the initial appeal." See text accompanying note 7, *supra*.

F.2d at 1416; *E.F. Operating Corp.*, 993 F.2d at 1029 & n.1.[25] We, too, have twice recognized the strength of the *Young Radiator* analysis of *Torres* in this connection, although not ultimately resolving the matter. *See Crist* at 1289; *Stockstill* at 1296-97. In *Torres*, notice of appeal was timely filed naming as appellants fifteen of the sixteen plaintiffs, but the name of the sixteenth plaintiff, Jose Torres, was inadvertently left off the notice of appeal. The Supreme Court held that because Torres' name was left off the notice of appeal, the court of appeals never acquired *jurisdiction* on appeal over the case as to Torres. Obviously, had the notice of appeal of the other plaintiffs—which was indisputably timely and adequate—sufficed to bring up the whole case or the entire judgment, then this would not have been so. *Torres* thus necessarily rejects the notion that a valid notice of appeal by one party suffices to vest the court of appeals with jurisdiction over the entire judgment of the district court, even as to parties not giving notice of appeal. As the *Young Radiator* Court stated:

> ". . . it could have been argued in *Torres* that the notice of appeal naming fifteen of the sixteen plaintiffs invoked the jurisdiction of the court over the whole case, so that a separate appeal by the sixteenth plaintiff would not be *jurisdictionally* required. Yet the Court's holding made clear that the requirements of Rules 3 and 4 must be satisfied as to each party, and precludes the argument in this case that Celotex's

---

[25] Another panel of the Third Circuit, however, rejected this reading of *Torres*. *See United States v. Tabor Court Realty Corp.*, 943 F.3d 335, 343-344 (3d Cir. 1991). *Tabor Court* is itself apparently contrary to the Third Circuit's *New Castle County*, 933 F.2d 1162, 1206 (3d Cir. 1991) ("Absent a cross-appeal, however, the Carrier Appellees *may not obtain* more extensive relief on appeal than they received in the district court"; emphasis added).

31

noncompliance with Rule 4(a)(3) can be waived." *Id.*, 881 F.2d at 1416.

The theory that an initial appeal by one party brings up the entire judgment so as to render appeals by other parties irrelevant for purposes of the jurisdiction or power of the court of appeals is likewise rejected, at least implicitly, by *Osterneck v. Ernst & Whinney*, 109 S.Ct. 987 (1989).[26]

---

[26] There, the plaintiffs Osterneck, stockholders in a corporation which merged into Barwick Industries, sued defendants Barwick Industries, its officers, E.T. Barwick, Keller, and Talley, and its accountants, Ernest & Whinney (E&W), claiming that the merger was induced by fraud. On January 30, 1985, judgment was entered on the jury verdict awarding the Osternecks damages against Barwick Industries, Keller, and Talley, but exonerating E.T. Barwick and E&W. Within ten days, the Osternecks filed a motion for prejudgment interest. While this motion was pending, on March 1, 1985, the Osternecks filed a notice of appeal naming all defendants, and on the same day Talley and Keller filed notices of appeal. On July 9, 1985, the district court entered an amended judgment, granting the Osternecks some but not all the prejudgment interest they had requested (but otherwise not changing the January 30 judgment). Within thirty days thereafter, Keller and Talley filed notices of appeal, as did the Osternecks on July 31. The Osternecks' July 31 notice of appeal named all the defendants except E&W. Before the court of appeals the Osternecks claimed that the judgment erroneously exonerated E&W and E.T. Barwick, and also that the award of prejudgment interest was inadequate; Keller and Talley argued, *inter alia*, that the Osternecks' claims against them were barred by limitations and that the evidence was insufficient. The court of appeals held it had jurisdiction over the July 1985 appeals of Keller and Talley, but found that the issues raised by those defendants were without substantive merit. *Osterneck v. E.T. Barwick Industries, Inc.*, 825 F.2d 1521 (11th Cir. 1987). The court likewise concluded that it had jurisdiction over the Osternecks' July 31, 1985, notice of appeal, but that this notice of appeal did not suffice to bring forward the Osternecks' claims against E&W, as E&W was not named therein. *Id.* at 1528-1529. *See, also, e.g., Capitol Parks v. Southeastern Advertising*, 30 F.3d 627, 630 (5th Cir. 1994); *Pope v. MCI*, 937 F.2d 258, 266 (5th Cir. 1991), *cert. denied*, 112 S.Ct. 1956 (1992). The court of appeals further held that the Osternecks' March 1, 1985, notice of appeal (and that of Keller and Talley filed the same day) was rendered ineffective by the then provisions of Fed. R. App. P. 4(a)(4) because it was filed while the motion for prejudgment

In summary, the language and history of Fed. R. App. P. 3, 4(a), and 26 (b), and the Supreme Court's decisions in *Morley* and *Torres*, compel the conclusion that a court of appeals, despite a timely and proper appeal from a district court judgment by one party, lacks power or jurisdiction to modify that judgment so as to make it either more favorable to another party who has not timely appealed it or less favorable to the only party who has appealed it. The majority errs in its implicit holding to the contrary.

## II.

Finally, even if we were dealing with a rule of practice which the Court might waive in a particular case, *cf*. Fed. R. App. P. 2, I would still dissent from the majority's modification of the judgment, which only the plaintiff has appealed, from one of dismissal without prejudice to one of dismissal with prejudice, and from its apparent announcement of a new rule of practice that in

interest, which the court concluded was a Rule 59(e) motion, was pending. *Osterneck*, 825 F.2d at 1525-1529. The Osternecks petitioned for *certiorari* complaining of the dismissal of their appeal as to E&W. The Supreme Court granted the writ and affirmed. It noted that "[t]he Court of Appeals dismissed petitioners' appeal as to Ernest & Whinney for lack of jurisdiction." *Osterneck*, 108 S.Ct. at 989. It agreed with the court of appeals that the Osternecks' motion for prejudgment interest was a Rule 59(e) motion, and since it was pending when the March 1 notice of appeal was filed that notice of appeal was nugatory under the then provisions of Fed. R. App. P. 4(a)(4). *Id*. at 990-992. The Court declined to make any equitable exception to this ruling. *Id*. at 992-93. The Osternecks did not contend in the Supreme Court that their July 31, 1985, notice of appeal was effective as to E&W. *Id*. at 990 n.1. Of course, had the July 1985 notices of appeal by Keller and Talley—which *were* properly before the court of appeals—brought the whole July 9, 1985, judgment into the court of appeals for jurisdictional purposes, then the court of appeals would have had jurisdiction over the Osternecks' complaints of that judgment's denial to them of recovery against E&W.

33

all pre-service dismissals without prejudice of *in forma pauperis* suits where only the plaintiff appeals this Court will *sua sponte* determine whether the dismissal of any claim could properly have been with, rather than without, prejudice, and will modify the judgment accordingly.

Courts that have espoused the rule of practice approach have almost always emphasized that waiver or excuse of the failure to file a protective or cross-appeal was available only in most narrowly defined circumstances. Those circumstances we listed in *Anthony*, 693 F.2d at 497-98, and there refused to go beyond them, as we similarly so refused in *Robicheaux, Stockstill,* and *Crist*.[27] Other courts that have assumed *arguendo* that a rule of practice "waiver" might theoretically be available in some cases have refused to invoke it in similar circumstances. *See, e.g., Lumbermens Mut. Cas. Co.*, 917 F.2d at 662-663. Where "rule of practice" waiver of failure to appeal has been invoked it has almost always been in highly unusual cases involving three or more parties where the rights of the parties are interdependent and on the appeal by one party the appellate court *changes* the judgment in

---

[27] *Anthony* states:

". . . this discretion has been exercised only in narrowly defined situations: when the reversal 'wipes out all basis for recovery against the nonappealing, as well as against the appealing defendant" [citations,] when the failure to reverse with respect to the nonappealing party will frustrate the execution of the judgment in favor of the successful appellant, [citation,] or when the appealed decision could reasonably be read as not being adverse to the nonappealing party." *Id*. at 497-98.

34

a way that adversely affects the rights of one nonappealing party as against another or eliminates the basis of the judgment against a nonappealing party. Thus, 15A Wright, Miller & Cooper, *Federal Practice and Procedure*, (2d ed.) § 3904 at 219, states "[t]he cases that have excused separate appeal requirements virtually all involved circumstances in which appeals were taken by one or more defendants or third party defendants, but not by others. The decision on appeal was inconsistent with the judgment against those who did not appeal." *See also* 9 *Moore's Federal Practice* (2d ed.) ¶ 204.11[5] ("In some cases, however, the rights of the parties are tied together so closely that the court of appeals can render no judgment that would be just without affecting the rights of the parties who did not file a notice of appeal.").

*No* cases have been found granting a "rule of practice" waiver of the failure to file a cross-appeal or protective appeal in a situation, such as the present, where absent such a waiver the only result would have been a simple affirmance of the judgment below. The waiver is granted *only* where on the appeal timely taken the *appellate court* properly grants relief to the appellant and accordingly *changes* the judgment below in some respect; *because of that appellate change*, nonappealing parties are sometimes, in certain narrow and extreme cases, allowed to request other or further changes in the judgment below under the "rule of practice" theory notwithstanding their failure to appeal, because the *appellate change* in the judgment affects their rights against some other nonappealing party or eliminates the basis of the judgment

35

against them.  The Court's decision in the instant case represents a sharp break with this rationale, and in effect simply creates a wholly new rule of practice.

Moreover, our departure from the "inveterate and certain" rule of *Morley* gains us next to nothing in judicial efficiency.  Any gain in judicial efficiency presupposes *both* that if we had merely affirmed the dismissal without prejudice the appellant would in fact have timely filed another suit on the same claim against the same defendant, *and* that because we have changed the dismissal so that it is with prejudice, he will not actually do so.  This is a lot of assuming.  But, to promote the efficiency of this Court—and I believe the district courts generally can pretty well take care of their own efficiency concerns—we must also *further* assume that when the district court disposes of the second suit, which will again doubtless be by dismissal, the plaintiff will again appeal to us, but would not have done so had we on the first appeal changed the district court's original dismissal to be with prejudice.[28]  Nor are these hypothetical efficiency gains without costs (apart from the systemic costs of casually departing from established legal rules), for we must now not only determine whether the dismissal without prejudice violated the appellant's rights, but we must also

---

[28]    Experience has shown few, if any, occasions where we have faced appeals by plaintiffs in second suits following our affirmance of a section 1915(d) dismissal without prejudice of the first suit on the same claim, particularly not where the initial dismissal was on grounds which likely would have warranted dismissal with prejudice; nor is there any reason to believe that we would not have faced the second appeal had we, on the first appeal, changed the dismissal to "with prejudice."

*sua sponte* determine the sometimes rather close question of whether the dismissal should instead have been made with prejudice. In this case, for example, we hold that the dismissal should have been with prejudice as to three of the claims, but was properly without prejudice as to the fourth.

### III.

The plaintiff alone has appealed the judgment dismissing all his claims without prejudice. Instead of entering the obviously merited simple affirmance, we have undertaken to change the judgment to one of dismissal with prejudice as to three of the four claims. That change exceeds our power and jurisdiction. Even were we to follow the theory that the failure to take a protective or cross-appeal may in certain rare instances be waived by a court of appeals, this simple case—where absent the waiver there would be only a plain vanilla affirmance—is totally beyond the universe of cases in which that approach has been followed and is wholly unsupported by their rationale.

From one point of view, this is certainly a "nothing" case. But as a court of appeals it is vitally important that we understand and observe the rules which govern our jurisdiction, power, and proceedings. We should not so casually depart from such inveterate and certain rules.